RICHMOND STANDARD STEEL SPIKE & IRON CO. v. ALLEN et al.

(Circuit Court of Appeals, Fourth Circuit.   November 8, 1906.)

No. 650.

**1. BANKRUPTCY—CORPORATIONS—ACTS OF BANKRUPTCY.**

An insolvent corporation occupying leased premises does not commit an act of bankruptcy by permitting its property on such premises, which is subject to a mortgage given to secure its bonds, to be sold under a distress warrant lawfully issued for past due rent, which by the state statute is made a lien on such property. The only persons concerned in such transaction are the landlord and the mortgage bondholders, each having a lien, and the sale does not affect general conditions nor operate to give any creditor a "preference through legal proceedings," within Bankr. Act July 1, 1898, c. 541, § 3a(3), 30 Stat. 546 [U. S. Comp. St. 1901, p. 3422].

[Ed. Note.—For cases in point, see Cent. Dig. vol. 6, Bankruptcy, § 82.]

**2. SAME.**

There is no legal obligation on an insolvent debtor to file a voluntary petition in bankruptcy.

**3. SAME—TRANSFER OF PROPERTY.**

The sale of property by an insolvent corporation, and the use of the proceeds in paying the current salary of its president, is not a transfer with intent to prefer a creditor which constitutes an act of bankruptcy, under Bankr. Act July 1, 1898, c. 541, § 3a(2), 30 Stat. 546 [U. S. Comp. St. 1901, p. 3422]; such salary being a legitimate current expense so long as the corporation is a going concern.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 6, Bankruptcy, §§ 75, 78.]

Appeal from the District Court of the United States for the Eastern District of Virginia, in Bankruptcy.

Wm. L. Royall, for appellant.

B. Rand Wellford (Thos. N. Carter, on the brief), for appellees.

Before GOFF and PRITCHARD, Circuit Judges, and BOYD, District Judge.

BOYD, District Judge. This is a proceeding in involuntary bankruptcy, and the appeal here is upon exception duly taken by the appellant to the order of adjudication.

The petitioners are holders of certain bonds of the Richmond Standard Steel Spike & Iron Company, which said bonds are secured by deed in trust upon the property of said company. The following agreed facts are set out in the record: That the Richmond Standard Steel Spike & Iron Company is a corporation having for a period greater than six (6) months preceding the filing of the petition in this cause its principal place of business in the city of Richmond, Va., and that it has a plant for the manufacture of spikes in the city of Manchester, Va., and that the said company owes debts in excess of $1,000. It is further admitted that the said company is indebted to the petitioners as set out in the petition filed in this case, and that the security held by them is not sufficient to pay the debts due them so that there will be due them, over and above what will be paid them under their lien, an amount largely in excess of $500. It is further admitted that the said company is insolvent, and that within four (4) months next preceding

the filing of the said petition Wm. Northrop and H. T. Wickham, receivers of the Virginia Passenger & Power Company, from which the said company rents the water power by which its mill is operated and the site on which the mill is situated, levied a distress warrant upon the property of the said spike company upon the leased premises, of which a true copy is made part of defendant's answer to the original petition, and that the same was sold under the said distress warrant October 18, 1905. That the property so levied on consisted mainly of machinery and fixtures which were embraced in the articles conveyed by the deed of trust securing the petitioners and other bondholders of the said spike company. It is further admitted that no step was taken by said company five days prior to the date fixed for the sale of the property levied on to prevent the said sale or to have it ascertained by legal tribunal whether the property was liable to distress and did not within five (5) days vacate and discharge the said levy. It is further admitted that Corbin Warwick is the president of the said spike company and has been for a number of years, and that he has within four (4) months next preceding the filing of the petition in this cause sold the property covered by the said deed of trust, being part of said Manchester plant, and applied the proceeds of sale to pay salary due him as president of said company. It is further agreed that the rent levied for by said receivers was one year's overdue rent.

The question presented for our consideration is whether the appellant committed an act of bankruptcy. It is insisted by the appellees that there were two acts of bankruptcy, either one of which was sufficient to warrant the order of adjudication. The one was that within four months next preceding the filing of the petition a warrant of distraint for rent was levied on the property of the appellant; that under this warrant, which was issued at the instance of the landlord, certain of the property, consisting mainly of machinery and fixtures at the plant, which were embraced in the articles conveyed by the deed in trust as security for the payment of the bonds held by petitioners and others, was taken from the possession of appellant and sold to pay a year's rent, then overdue; that the appellant made no resistance to the execution of the warrant of distraint or to the seizure and sale of the property thereunder, nor did the appellant vacate and discharge the levy within five days of the time fixed for the sale; that appellant was, at the time, insolvent.

Counsel for appellees argue that to permit this property to be taken and sold by the landlord under distress was an act of bankruptcy, even though the levy was in other respects lawful. A statute of the state of Virginia in effect gives a lien to the landlord for one year's rent that is due, which lien is by the law superior to the claim of others of the tenant's creditors. This statute provides, in substance, that the landlord may distrain for his rent at any time within five years from the time it becomes due; that the distress shall be made by a constable, sheriff, or sergeant of the county or corporation wherein the premises, or some part thereof, yielding the rent may be, or the goods liable to distress may be found. The warrant of distraint is issued by a justice or a clerk of a circuit or corporation court, and is founded upon an

affidavit of the person claiming the rent or his agent that the amount of money or other thing to be distrained (to be specified in the affidavit) as he verily believes is justly due, etc. The law provides further that the distress may be levied on the goods of the tenant, his assignee, or undertenant found on the premises or which may have been removed therefrom not more than 30 days. There is a further provision that, if the goods of the tenant are subject to a lien when carried on the premises, then only his interest is subject to distress; but if the lien is created while the goods are on the leased premises they shall, notwithstanding such lien, be liable to distress for one year's rent.

The position of the appellees' counsel that the action of the appellant in this transaction was an act of bankruptcy is based on the ground that the latter, being insolvent, suffered its property to be taken under legal proceedings, thereby giving a preference to one of its creditors. It will be observed that the proceeding under the Virginia statute, to recover rent, is summary. The initiative is the ex parte affidavit of the landlord or his agent, and upon the filing of the affidavit, without summons or notice to the tenant, the warrant of distraint is issued to the officer, and under this, without further proceeding, he is authorized to levy upon the property of the tenant, his assignee, or his undertenant found upon the leased premises. To this point, so far as we can find in the Virginia law, there is no opportunity afforded the tenant to be heard. Of course, if the warrant of distress were issued upon a false affidavit or for more rent than was due, or under other circumstances wrongfully affecting the rights of the tenant, he would have his remedy by injunction or some other adequate proceeding. But in this case it is an admitted fact that the rent claimed by the landlord, and for which the distraint was made, was due, and that the landlord had the right, under the Virginia law, to levy upon the property of the tenant found on the premises and sell the same to satisfy the claim. In this situation, it would seem there was no alternative left to the tenant except to pay the amount or permit the officer to proceed with the distress.

A further contention of the counsel is that the appellant should have sought, by injunction, to stop the landlord, and thus prevent his obtaining a preference over the petitioners in the distribution of the estate. We cannot see the force of this contention, under the circumstances. The petitioners were bondholders, claiming a lien upon the property by virtue of the deed in trust executed to secure the payment of their bonds. The landlord, by virtue of the Virginia statute, claimed a lien for his rental. There was no contest between the general creditors of the appellant. It was simply one between the bondholders on the one side and the landlord on the other as to which had a prior lien upon certain property of an insolvent debtor. The failure of the tenant to espouse the cause of either is not, in our opinion, an act of bankruptcy. It is insisted that some of the property seized under the warrant was fixtures and was therefore not liable to distraint for rent. If this be true, then the lien of the bondholders, if such they had, has not been divested by the seizure and sale, nor their security for the payment of their bonds thereby diminished; for the property, although taken and removed from the premises, is still subject to the lien which attached

by reason of the deed in trust. Another view: If the fixtures were of such character that they became a part of the freehold, then it may well be argued that such fixtures belonged to the landlord, and that the levy under the distress for rent was made upon his own property, and no right of the petitioners was infringed.

In order to give a preference by legal proceedings such as to constitute an act of bankruptcy, an insolvent debtor must suffer or permit the proceeding to be consummated by which the preference is obtained without having vacated or discharged it within five days before the sale or the disposition of the property. This principle applies where the proceeding is made effective within four months of the filing of the petition, and the proceeding must, of itself, be the means by which the preference is obtained. Under the law of Virginia, the right of the landlord to distrain the property of the tenant for rent has a priority over any lien created on such property after it is carried onto the leased premises. In other words, as we understand the Virginia statute, the lien of the landlord for rent attaches to the property of the tenant as soon as it is placed on the premises, and this lien continues and is capable of being enforced in the manner and under the conditions provided in the statute. It has priority over all other liens subsequently created and retains this position of dignity, provided the landlord pursues his right in apt time. It has been held that the preference by legal proceeding contemplated by the bankrupt act does not include a levy upon a judgment of foreclosure of a lien which affects only the property bound by the lien. Loveland's Bankruptcy (2d Ed.) 167. Authorites cited in note 95.

Following in the line of this principle, it is our opinion that, if the property seized by the landlord was subject to his lien for rent, it was not an act of bankruptcy for the appellant to suffer or permit the distress proceeding; and, on the other hand, if the property taken was subject to the prior lien of the deed in trust as security for the payment of the bonds of the petitioners, as claimed by them, its seizure by the landlord was an invasion of the rights of the petitioners for which the law provides a remedy, but which in no sense can be construed into a preference by the appellant of one creditor over another. In fact, as before stated, this controversy is confined to the petitioners, who are holders of bonds secured by deed in trust and the landlord, with his claim for rent; each claiming priority of lien upon the property of an insolvent corporation. The general or unsecured creditors of the corporation, if there be such, can have no interest in the result. The law in regard to preference by legal proceeding is that the existence of the lien obtained by the proceeding shall work a preference; that is, shall enable some one of the creditors of the insolvent debtor to obtain a greater percentage of his debt than other creditors. How can this principle apply here, when the sole question involved is as to which one of two creditors, each claiming a lien upon certain property of an insolvent debtor, is entitled to priority. No matter how this question is determined, it would in no way tend to secure an equitable distribution of the insolvent's estate among his creditors, which is the purpose of the bankrupt act. Another contention of appellees' counsel is that

it was the duty of the appellant, when it discovered itself to be in such extremity financially, and when the landlord was about to distrain the property for rent, to file a voluntary petition in bankruptcy. We do not think that this position can be maintained. In Wilson v. City Bank, 17 Wall. 473, 21 L. Ed. 723, the case decided under the provisions of the act of 1867, it is held that there is no legal obligation on the debtor to file a petition in bankruptcy, and that the failure to do so is not sufficient evidence of an intent to give a preference to the judgment creditor or defeat the operation of the bankrupt law. It is true that the decision in that case was, as stated, under the law of 1867, by the provisions of which the intent to prefer was a necessary element of preference by legal proceeding in order to constitute an act of bankruptcy on the part of the debtor; but the reasoning will apply with as much force in the administration of the present act as of the former; that is, that there is any obligation resting upon the insolvent debtor to file a voluntary petition in bankruptcy can only be argued from implication, for it is clear that there is no such duty imposed by the terms of the act. There is nothing in the law requiring an insolvent person to file a petition under any circumstances. He has the right to do so when he finds that he is unable to pay his debts and desires to make a surrender of his property, under the provisions of the bankrupt act, distribute it equally among his creditors, and be relieved from further liability. The right of voluntary petition is a privilege extended by the law to be exercised or not by a debtor, as he may see proper. It is the right of the creditor to institute and prosecute involuntary proceedings, but he cannot, under any conditions, compel the debtor to take the initiative.

The other alleged act of bankruptcy is based upon the following facts:

"It is further admitted that Corbin Warwick is president of the said spike company and has been for a number of years; that he has within four months next preceding the filing of the petition in this cause sold property covered by the said deed of trust, being part of said Manchester plant, and applied the proceeds of sale to pay salary due him as president of said company."

For an insolvent debtor to transfer property, subject to a lien, in behalf of a creditor or class of creditors, is not, of itself, an act of bankruptcy. A transfer, in order to constitute an act of bankruptcy, must be made with intent on the part of the debtor to prefer a creditor. The underlying principle of the bankruptcy act is that, when a debtor becomes unable to pay all of his debts in full—when he has not sufficient property and effects to discharge his indebtedness—his creditors are entitled to have his estate equally distributed among them. In such condition, therefore, if the debtor makes a transfer of property to one of his creditors in order to give that creditor a preference, he thereby commits an act of bankruptcy, provided the transaction is within four months of the filing of the petition for adjudication. The position of the appellees' counsel is that the president of this insolvent company, having sold certain property which was covered by a deed in trust executed as security for the payment of certain bonds of the company held by the petitioners, and applied the proceeds in payment of his salary, that this was an act of bankruptcy on the part of the company. If the property sold was, as is contended, covered by the deed in trust,

Warwick, the president, had no right to sell it, and his act was wrongful. There is no evidence that he sold it by authority of the company, or that the company ratified his action; nor are we advised that it was within the scope of the president's power to sell the property which composed the plant and operating machinery of the company. As will be seen, the property sold was a part of the Manchester plant. If it be true that Warwick, without authority, disposed of property which was subject to the lien of the bondholders, this would be his act, for which he would be individually liable, but the company cannot be held responsible. However, it is not necessary to adopt this course of reasoning as a basis of opinion in this case. Let it be taken as a fact that the company disposed of the property referred to and used the proceeds in payment of the salary of the president. We do not think that, under the conditions which were shown to exist about the affairs of the company, this was an act of bankruptcy. If the salary of the chief officer of a corporation has accumulated and thus become an existing debt, and the corporation being insolvent, and in contemplation of such insolvency pays the debt with intent to prefer it over their other creditors, this would be an act of bankruptcy. But it is a very different case when a corporation, carrying on the business of a manufacturer at a time when unable to pay all of its debts, uses a part of its assets to pay current expenses. The current salary of the president of a corporation, if confined within a reasonable amount, is a part of the necessary running expenses, and it has to be paid in order to keep the establishment in operation. So far as appears here the money paid to Warwick was for his current salary; that its payment was necessary in order that his services might be retained to manage and continue the company's business. Undoubtedly there are times in the course of the affairs of many corporations and business concerns when they, if brought to a settlement, would be found without property and effects sufficient to pay their indebtedness, and yet they continue to operate, buy material, pay for it, sell product and other property, and pay the current expenses of the business from the proceeds, including salaries of officers. No court, so far as we find, has held such transaction to be an act of bankruptcy. To do so would, in many instances, stop operations, and, instead of benefiting, would affect injuriously the interests of creditors.

Our conclusion is that the appellant did not commit an act of bankruptcy in either instance stated in the facts. The order of adjudication entered by the District Court is therefore vacated, and the judgment reversed.

Reversed.