GAY et al. v. HUDSON RIVER ELECTRIC POWER CO. et al.

(Circuit Court of Appeals, Second Circuit. January 9, 1911.)

No. 116.

1. **APPEAL AND ERROR (§ 101*) —APPEALABLE ORDERS — ORDER IN RECEIVERSHIP PROCEEDINGS.**

An order of a federal court of equity having possession of the property of a corporation through its receivers, denying to a mortgagee the right to have the property sold, given by the terms of the mortgage in case of default, is appealable.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 681–687; Dec. Dig. § 101.*]

2. **CORPORATIONS (§ 481*)—MORTGAGES—RIGHTS AND DUTIES OF TRUSTEES.**

The trustee in a corporation mortgage required by the terms of the mortgage to foreclose in case of default in payment of interest on the request of the holders of two-fifths in interest of the bonds secured is not relieved from such duty nor deprived of the right by the fact that a majority of the bondholders do not favor the proceeding, nor is it chargeable with laches which deprives it of the right because it waited until after several defaults in the hope of a reorganization of the corporation which would obviate the necessity of foreclosure.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 481.*]

3. **CORPORATIONS (§ 481*)—MORTGAGES—RIGHTS OF TRUSTEES.**

A court of equity has no power to deny to the trustee under a corporation mortgage the right to foreclose on default, expressly given by the contract, on the ground that a sale of the mortgaged property at the time and under the particular circumstances will work a hardship to other creditors of the mortgagor and other affiliated corporations.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 481.*]

Appeal from the Circuit Court of the United States for the Northern District of New York.

Suit in equity by Eben H. Gay and others against the Hudson River Electric Power Company, the Empire State Power Company, and others. The New York Trust Company, as trustee, appeals from an order denying it leave to sell the property of the Empire State Power Company, under the terms of a mortgage. Reversed.

See, also, 182 Fed. 904.

This cause comes here upon an appeal from an order of the Circuit Court, Northern District of New York, denying the application of the New York Trust Company, trustee under a mortgage of the Empire State Power Company, for leave to sell the mortgaged property; there having been default in payment of interest and of sinking fund moneys due under the mortgage.

The Empire State Power Company owns a dam, power house, river rights, and four or five dam sites on the Schoharie river, and is engaged in the generating of electricity for light, heat, and power and the sale thereof, in the city of Amsterdam, N. Y., and immediate vicinity. All of its property is subject to the mortgage which was executed May 1, 1900, to secure an issue of bonds of which $210,000 are outstanding. It is a first mortgage on said property. Two of its clauses read as follows:

"Eleventh. In case default shall be made in the payment of any interest on any of said bonds secured hereby, as and when such interest shall become due and accrued, such default shall continue for six months, or in case default shall be made in the payment of the principal of any of said bonds when the same shall mature or otherwise become payable, then, and in every such case, the trustee may, and upon the request of the holders of two-fifths in interest of the bonds hereby secured and then outstanding, by an instrument or concurrent instrument in writing, signed by them or their attorneys in fact duly authorized for that purpose, shall, with or without entry, sell all the premises, estate, property, rights and franchises hereby conveyed, or so intended to be, at public auction in the city of Amsterdam, N. Y., after giving notice of such sale as required by law, and also notice by publication in at least two newspapers published in the county of Montgomery, at least once a week for six consecutive weeks next preceding such sale, and from time to time to adjourn such sale or sales, in its discretion, and without further notice to hold such adjourned sale or sales, and upon any sale or sales hereunder to make and deliver to the purchaser and purchasers of the premises, estate, property rights and franchises so sold a good and sufficient deed or deeds for the same, which sale shall be a perpetual bar, both in law and in equity, against the said Empire State Power Company and all persons or corporations lawfully claiming, or to claim by, through or under it, and, upon the making of any such sale, the principal of all the bonds hereby secured and then outstanding shall forthwith become due and payable, anything in said bonds to the contrary notwithstanding, and upon the making of any such sale, the said trustee shall apply the proceeds thereof as follows, to wit:

"1. To the payment of the costs and expenses of such sale or sales, including a reasonable compensation to such trustee, its agent, attorney and counsel, and all expenses, liabilities and advances made and incurred by such trustee in managing and maintaining the property hereby conveyed, or intended to be, and all taxes and assessments superior to the lien of these presents.

"2. To the payment of the whole amount of principal and interest which shall then be owing or unpaid upon the bonds secured hereby, without any preference or priority whatever, whether the said principal by the tenor of said bonds, be then due or yet to become due; and in case of the insufficiency of such proceeds to pay in full the whole amount of such principal and interest owing and unpaid upon the said bonds, then to the payment of such principal and interest pro rata, without preference or priority, but ratably, to the aggregate amount of such principal and accrued and unpaid interest.

"3. To pay over the surplus, if any, to whomsoever may be lawfully entitled to receive the same.

"In the event of any sale under or by virtue of the power of sale herein contained, or by virtue of judicial proceedings or decree of foreclosure and sale, the whole of the property hereby mortgaged shall be sold in one parcel and as an entirety, unless the holders of a majority in amount of the bonds hereby secured, then outstanding, shall in writing request the trustee to cause said premises to be sold in separate parcels, in which case the sale shall be made in such parcels as may be specified in such request, so far as the law may allow. It is further provided, declared and agreed that in case any sale shall be made of the said premises, property, rights, franchises and estate under or in execution of the provisions hereof, the purchaser or purchasers at said sale shall be entitled, in making settlement for and payment of the purchase money, to deliver to the person or persons legally appointed and qualified to receive the payment of such purchase money, and to turn in and use any of the bonds and coupons secured by these presents then matured and unpaid, towards the payment of said purchase money, reckoning and computing said bonds or coupons for that purpose at a sum, equal to and not exceeding that which would be payable out of the net proceeds of said sale to the purchaser or purchasers, as the holder or holders of said bonds or coupons for his or their just share and proportion in that character of said net proceeds, and a due apportionment and distribution thereof, and after allowing for the proportion of payments which may be required by the court to be paid in cash for the expenses of the trust, and of the sale, or for other purposes."

"Thirteenth. In case default shall be made in the payment of the principal or interest of any of said bonds when the same shall become due and payable, or in the observance or performance of any covenant or condition in said bonds or herein contained on the part of the party of the first part, and such default shall continue for six months, it shall be the duty of, and it is hereby made obligatory upon, the trustee, upon the request in writing of the holders of two-fifths in interest of said bonds hereby secured and then outstanding, and upon proper indemnification, to proceed forthwith to enforce the rights of the said trustee and of the bondholders hereunder, by sale or entry, or both, according to such requisition, or by judicial proceedings for such purpose, as it, being advised by counsel learned in the law, shall deem most expedient in the interest of the holders of the bonds secured hereby."

Subsequent to the execution of the mortgage and the issue of the bonds, a majority of the stock of the Empire State Company came into the hands of various other companies (and individuals interested therein) engaged in similar enterprises, and the Empire State thus became one of the members of the system of companies which were operating in common when, in the fall of 1908, the United States Circuit Court, Northern District of New York, appointed receivers for all the property of all the companies in the suits above entitled. Some reference to the interrelations of these companies will be found in our opinion in In re Hudson River Power Transmission Co. (filed in December last) 183 Fed. 701.

In consequence of these proceedings, all the property of the Empire State Company is now in the custody of the Circuit Court through its receivers. There are mortgages on the several properties of the allied companies, and in the course of the receivership proceedings the court on July 7, 1909, made an order allowing these various trustees, including the petitioner, to intervene in the suit—a creditor's bill—under which receivers were appointed, and to file cross-bills or ancillary bills for the foreclosure of these mortgages. Most, if not all, of the several trustees have begun suits in foreclosure; but this petitioner has not done so.

Morgan M. Mann, for appellant.

Davies, Stone & Auerbach (C. E. Hotchkiss, of counsel), for Knickerbocker Trust Co.

Abram J. Rose and George B. Curtiss, for receivers.

Before LACOMBE, WARD, and NOYES, Circuit Judges.

LACOMBE, Circuit Judge (after stating the facts as above). The reason why petitioner has not brought a foreclosure suit, but applies instead for leave to sell under the eleventh clause, is quite apparent from an examination of the two clauses above quoted. Under the thirteenth clause foreclosure can only be had for defaulted interest; the principal cannot be declared due upon any such default, however long continued; there can be no foreclosure which will protect the principal until it falls due in 1930. Under the eleventh clause, however, if defaulted interest is not paid by the time of sale, the principal shall ipso facto become due and payable, and the proceeds of the sale be used to pay it.

The property being actually in the custody of the federal court, and the trustee therefore being powerless itself alone to make delivery to a purchaser, it made this application to the court. There seems to have been a general impression upon the hearing below that the application was in effect to turn the property back to the trustee to conduct the sale, marshal the proceeds, and dispose of them. The phraseology of the prayer of the petition is calculated to give such an impression, since it asks leave for the "petitioner to sell the property in accordance with provisions of said paragraph eleven"; and it would seem from respondent's brief and their counsel's statements on the argument before us that petitioner's counsel did nothing in the court below to dissipate this impression.

Here, however, we have a very different state of affairs. Appellants' counsel conceded on the argument, and there is nothing in his brief inconsistent with the concession, that the federal court having custody of the property will retain such custody until the rights of all parties interested are determined and disposed of.

This concession disposes of a large part of respondent's brief. There is no "request for permission to withdraw to the state court the controversy which had originated in the Circuit Court"; there is no suggestion of withdrawing from the latter court "all questions in reference to the disposition of the surplus." All that is asked is that the sale be had forthwith in accordance with the terms of the mortgage and the provisions of statute relating to such a sale of real estate located within this state. Should there by any surplus left after paying the expenses of sale and the amount due under the mortgage, application for instructions as to its disposition will be made to the Circuit Court. It is necessary only to consider some further objections which have been raised to a present sale.

We have no doubt that the order is appealable. The "discretion" exercised, in the form expressed in the order, practically denied to the trustee for bondholders all opportunity to avail of the rights secured by the eleventh paragraph, including the right to have principal sum declared to be presently due, by confining the trustee to remedies under the thirteenth paragraph, which postponed any right of foreclosure for unpaid principal for a period of 20 years. The question whether such an order does or does not "invade the established rights of the petitioners contrary to law, in such a manner that they can have no relief except by an appeal," is certainly presented upon the record; and for that reason the cause is within the principle laid down in Farmers'

Loan & Trust Company, 129 U. S. 206, 9 Sup. Ct. 265, 32 L. Ed. 656.

In an affidavit of one of the solicitors for the Knickerbocker Trust Company there is a suggestion that there may be a "question of the priority of the mortgage of the Hudson River Electric Power Company, Knickerbocker Trust Company as trustee (executed January 2, 1904), over the mortgage of the Empire State Power Company to the New York Trust Company as trustee." A similar statement is made as to a mortgage of the Hudson River Power Transmission Company. Since it appears that the mortgage given by the Empire State Company was executed in 1900, and all the bonds now outstanding were issued and bought before that company had any connection with any of these other companies, this suggestion is too vague and shadowy for present consideration. But if there be any equity outstanding in any one, superior to this mortgage, that would be no reason for denying any right of sale secured to the mortgagee; the lien will either adhere to the property sold or will attach to the proceeds.

It is contended that the trustee should be denied the relief prayed for because a majority of the bondholders appeared by counsel and assented to the order allowing the trustee to file a cross-bill of foreclosure under paragraph 13. There is no force in this contention, the trustee represents minority bondholders as well as the majority, and we know no reason why bondholders who thought at first of availing of one remedy, secured to them by the mortgage, but have not in fact availed of it, may not change their mind and resort to what subsequently seems to them a more efficient remedy. Nor is there any merit in the suggestion that because the trustee has waited till after several defaults have occurred, in the hope that some reorganization would straighten everything, it is to be denied the relief accorded by the mortgage upon any theory of laches.

The fundamental ground of objection is that because these various allied companies have been operated together as a single system, and because there are many different classes of creditors, some secured by the property of one company, others by the property of another, others again by the properties of some or all of the companies and also various classes of unsecured creditors, and because the best chance of preserving the system as an operative whole apparently lies in holding it together without allowing any part of it to break off, the court will secure the greatest good of the greatest number by so doing. But, although a court of equity will be astute to protect all equitable interests, there is a limit beyond which it may not go. In the case of successive mortgages upon a single piece of real estate, it may often be a great hardship to the holder of a junior mortgage to have the property sold under foreclosure of the first mortgage at a time when general financial distress will preclude any hope of enough being realized to pay more than the amount secured under the first mortgage, while, if all action could be suspended for two or three years, the property would sell for a price sufficient to pay both mortgages in full. But there is no power in a court of equity to abrogate the right of foreclosure and sale for which the first creditor stipulated, which is incorporated in the contract and on the strength of which

he lent his money. So, in the case at bar, it may be "selfish" for these bondholders to insist upon a present sale of the property, at a time when junior incumbrancers and unsecured creditors deeply interested financially are "so tied up by this litigation that it is impossible for them to protect themselves." It may be a "grievous wrong" to them to permit such sales; but, if it is the clear right of the mortgagee to have such a sale go on, the court may not deny him his right, however great may be the hardship to others. Nor must it be forgotten that these others gave credit with full knowledge; .the mortgage with its two paragraphs was on file advising them of the situation of the debtor at the time they trusted it.

Nothing is disclosed in this record affecting the validity of this mortgage or controverting the right of the representative of bondholders to avail of its terms.

The order should be reversed, and cause remanded, with instructions to allow a sale of the property forthwith in accordance with the terms of the mortgage and in conformity to the statutes, with the provision that the surplus, if any, be held to await further instructions of the Circuit Court. Of course, if the defaulted interest and sinking fund payments are made by receivers to keep the property intact—and a clause in the opinion of the Circuit Court judge indicates that this will probably be done—the right of sale is lost, until a new default, continuing for six months, may revive it.