## In re O'GARA COAL CO.

## O'GARA v. NEW YORK CENT. R. CO. et al.

(Circuit Court of Appeals, Seventh Circuit.    July 29, 1919.    Rehearing Denied
September 24, 1919.)

No. 2726.

1. BANKRUPTCY ⬦⟲384, 387, 440—ORDER IN AGREEMENT FOR SETTLEMENT OF
CLAIMS A COMPOSITION AND APPEALABLE.
An order approving an agreement for settlement of claims and distri-
bution of assets of a corporation which had been duly adjudged a bank-
rupt, whereby the corporation was permitted to continue in business, the
trustee having realized large profits while conducting its business, is in
the nature of a composition which under Bankruptcy Act, § 14c (Comp.
St. § 9598), would operate as a discharge, and hence such order is review-
able under section 25a (Comp. St. § 9609) by appeal, as an order granting
or refusing to grant a discharge, and not by petition to review and
revise.

2. BANKRUPTCY ⬦⟲376—COMPOSITION AGREEMENT FAIR AND EQUITABLE.
On appeal from an order approving an agreement for the settlement of
claims and distribution of the assets of a bankrupt corporation, where-
by a corporation which had been adjudicated a bankrupt resumed busi-
ness, held, that the plan was not open to attack as unfair and inequitable
to the bankrupt corporation.

3. BANKRUPTCY ⬦⟲389½—BANKRUPT CORPORATION MAY ELECT OFFICERS AND
DIRECTORS PENDING SETTLEMENT.
In view of the provisions of the Bankruptcy Act for compositions, a
corporation, though bankrupt, may elect officers and directors while its
affairs are being conducted in the bankruptcy court, and such officers
and directors may agree to a settlement of claims and distribution of
assets in the nature of a composition.

4. CORPORATIONS ⬦⟲198—VOTING TRUST VALID UNDER NEW YORK LAWS.
Where a New York corporation, engaged in coal mining, had its prin-
cipal offices and place of business in Illinois, held, that stockholders
might make valid voting trust agreements, such agreements being author-
ized by the New York laws, and votes for directors cast under the vot-
ing trust were not illegally cast.

5. CORPORATIONS ⬦⟲283(1)—VALIDITY OF ELECTION OF OFFICERS.
That a director and subsequent president of the corporation had been
attorney for the largest stockholder, and without his knowledge or ap-
proval acquired a large interest in the stock of the corporation, will not
defeat the general election of officers, and open to objection an agree-
ment for settlement of claims and distribution of assets approved by
the officers so elected.

6. CORPORATIONS ⬦⟲283(3)—VALIDITY OF ELECTION OF OFFICERS.
Where a large stockholder in a corporation attacked the legality of an
election of directors, asserting that one of the directors, who had been
his attorney, by virtue of such employment, induced other stockholders
to join a voting trust, the election will not be set aside unless it be shown
that by reason of such breach of trust relation a sufficient number of
votes were controlled to determine the election, and that but for such
action the result would have been different.

7. CORPORATIONS ⬦⟲283(4)—ESTOPPEL TO ATTACK ELECTION OF DIRECTORS.
Where a stockholder of a New York corporation, which elected direc-
tors after adjudication in bankruptcy and while its affairs were being
administered in the bankruptcy court, did not attack the election in the
state courts of New York, he cannot at a much later day, after the directors
have approved a plan of settlement and distribution of assets, which was
in the nature of a composition, attack the legality of the election.

⬦⟲For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appeal from and Petition to Review and Revise Order of the District Court of the United States for the Eastern Division of the Northern District of Illinois.

In the matter of the O'Gara Coal Company, bankrupt. An agreement for settlement of claims and distribution of assets, assented to by the New York Central Railroad Company and others, was approved by the court, and Thomas J. O'Gara appeals and petitions to review and revise the order approving the agreement. Petition to review and revise dismissed, and order affirmed on appeal.

See, also, 235 Fed. 883, 149 C. C. A. 195.

The O'Gara Coal Company, a New York corporation, was duly adjudged a bankrupt October 3, 1913, owing at such time about $510,000 on unsecured claims and $2,728,000 represented by bonds secured by a mortgage due September 1, 1955, drawing interest at 5 per cent. In addition there were disputed claims aggregating approximately $1,200,000, all of which disputed claims were subsequently disallowed. The assets consisted of about $19,000 in cash and coal mine leases covering some 30,000 acres in Illinois. In addition thereto bankrupt owned all of the stock of two coal mining companies, the Harrisburg Saline Collieries Company and the Harrisburg Big Muddy Coal Company, to which stock it was claimed the lien of the mortgage did not extend. Success attended the efforts of the trustee, who, aided by war prices, was able to show large profits. In May, 1918, current assets amounted to $1,590,000 and the value of the bankrupt's holdings was fixed at $10,000,000; the liabilities remaining about the same.

Bankrupt defaulted in its bond interest installment on September 1, 1913, and also failed to provide for the sinking fund installments due August 1, 1912 and 1913. In January, 1914, the trustee under the mortgage declared the entire amount of principal and interest immediately due and payable. In July, 1916, a decree was entered fixing the validity and determining the amount of the lien of the trust deed, all in favor of the trustee, and adjudging certain property not included in said mortgage to be equitably subject to the lien of said mortgage. This was done over the objection of appellant, Thomas J. O'Gara, who was the largest individual stockholder, owning some 45 per cent. of the stock, and was at one time the president of the corporation and later for a short period one of the trustees in bankruptcy. The estate being solvent in 1918, efforts were made to reorganize the company, and these plans bore fruit in May, 1919, when a plan of reorganization and a scheme for the full payment of all unsecured claims was worked out to the satisfaction of the court. This reorganization plan was proposed by certain unsecured creditors but met the approval of a bondholders' committee representing nearly all of the unsecured creditors, and purported to have the approval of the bankrupt company. It likewise met the approval of the court, who characterized the plan as "a fair and reasonable one, and it is to the best interests of the bond holders, the other creditors of the O'Gara Coal Company, and the O'Gara Coal Company that the same should be consummated in accordance with the plan and prayer contained in the petition herein presented to the court, and it is the duty of the Equitable Trust Company of New York to participate in carrying out the same."

Briefly, this plan provided for the payment out of the cash on hand, upon which the mortgage was a lien, of all unsecured claims; it increased the amount due on each ton of coal mined, thus providing an adequate sinking fund, provided for the waiver of the mortgagee's rights to insist upon the immediate payment of the entire sum represented by the mortgage, to wit, $2,728,000, extended the mortgage to all the property of the bankrupt, continued in force according to its original terms the mortgage and provided for the immediate payment of $250,000 to the mortgagee in consideration of its waiver of its rights. Other provisions of less importance need not be here recited.

Appellant denied that the bankrupt ever consented to the scheme of composition, but the court found in appellees' favor on this issue.

John S. Miller, of Chicago, Ill., for petitioner appellant.

Robert J. Cary and Julius Moses, both of Chicago, Ill., for respondents.

Before BAKER, ALSCHULER, and EVANS, Circuit Judges.

EVANS, Circuit Judge (after stating the facts as above). [1] Appellant·sought to review this order, both by way of appeal and by a petition to review and revise. Appellees insist that the remedy is solely by petition to review and revise, and that on such application O'Gara is barred from a consideration of the questions presented because of the record, which included the findings of fact made by the District Court, a part of which has been quoted.

We are convinced that, notwithstanding the matter was brought to the attention of the court by the petition of creditors, the proceeding was in the nature of a composition, which, under section 14c of the Bankruptcy Act (Act July 1, 1898, c. 541, 30 Stat. 550 [Comp. St. § 9598]), upon becoming effective, would operate as a discharge in bankruptcy. As the granting or refusal to grant a discharge is by section 25a of the Bankruptcy Act (Comp. St. § 9609) made reviewable by appeal, we conclude the order here under consideration was properly reviewable by appeal. In re Friend, 134 Fed. 778, 67 C. C. A. 500.

[2] Appellant attacks the plan of reorganization as inequitable and unfair to the bankrupt company and its stockholders. We have examined the testimony and the record with some care, and have reached the conclusion that the findings of the District Court above quoted are amply supported by the record. In the absence of such findings we would have been unable to reach any other conclusion.

In so concluding, due weight has been given to the fact that the company was operating most successfully in 1918. But a profitable business was not the only factor to be considered in solving this problem. For example, to pay unsecured creditors it was necessary to use the accumulated cash, which was subject to the lien of the mortgage. Sufficient funds to pay off the mortgage were not available. A new loan was therefore the only alternative. And in 1917–18 current rates of interest had soared. Five per cent. bonds were at a discount. Besides, the expenses incident to floating such a loan was no small item.

[3] Appellant disputes bankrupt's right to consent, claiming that the O'Gara Coal Company had no authority to transact any business, not even to elect its officers and directors, while its affairs were being conducted in the bankrupt court.

The provisions in the Bankruptcy Act providing for a composition clearly indicate that the Congress did not intend to deny to corporations the right to protect their own interest, including the right to elect directors. To give the bankrupt companies the right to propose compositions is inconsistent with a denial of the right of stockholders and directors to maintain the corporate existence and to take action necessary to the submission of such proposals. Nor does the right of the court to control the affairs of the company, as was done in Graselli Chemical Co. v. Ætna Explosive Co., 252 Fed. 456, 164 C. C. A. 380, deny to the stockholders the right to act in case the court fails or re-

fuses to exercise its supervisory power. 5 Thompson on Corporations, 5265.

Appellant contends that the bankrupt company did not consent to the plan of reorganization approved by the court, although he admits that at the regular annual meeting held March 6, 1918, a board of directors was chosen who in turn elected the officers that duly approved of the plan and joined in the petition to have the same approved by the court. Appellant contends, however, that the election of March 6, 1918, did not result in the selection of the directors who subsequently voted their approval of the plan under consideration. This contention is made, first, because the four directors each secured 30,083 votes cast under a voting trust agreement dated December 14, 1917; second, because one of the four directors and later the president of the company had been appellant's attorney, and it was a betrayal of the confidential relation existing between attorney and client that resulted in appellant's loss of control of the company's affairs.

[4] While conceding that a voting agreement was valid in the state of New York (in fact, authorized by the statutes of that state), appellant claims that this corporation was engaged in mining coal and had its principal offices and place of business in Illinois. We find nothing, however, in the statutes of Illinois or the decisions of its courts that would deny to stockholders of a New York corporation the right to make valid voting trust agreements, and no statute or decision to show that Illinois excludes foreign corporations from doing business in the state on account of the corporation's compliance with the regulations of the chartering state, and we reject as untenable the claim that these votes were illegally cast.

[5, 6] The claim that any one of the directors was chosen through the breach of the confidential relation of attorney and client finds no support in the pleadings or in the proof. Appellant alleges that a director and a subsequent president of the company—

"who after contriving to have this respondent (meaning O'Gara) authorize him to act as attorney at law for this respondent with respect to the interests of this respondent in the O'Gara Coal Company, looking to the reorganization thereof, acquired a large interest in the stock of the O'Gara Coal Company without the consent, knowledge, or approval of this respondent, for the purpose of using the said stock and the voting rights thereunder adversely to the interests of this respondent."

This allegation clearly fails to set forth any fact which would defeat the action of the stockholders at their annual meeting. But appellant further alleges that the said director, while acting as appellant's attorney and through and by virtue of such employment, induced various stockholders to join in the voting trust agreement, and caused them to cast their lot with said director, believing that in so doing they were acting for and with appellant. Obviously the stockholders' action cannot be nullified for the reason thus set forth, unless it be shown that a sufficient number of votes were thus controlled to determine the election.

It appears from appellant's answer that there were eight candidates for membership on the board of directors, seven of whom were elected. The smallest number of votes cast for any of the four whose ac-

tion is here challenged was over 31,000. The vote which the eighth candidate received was less than 8,000. It was necessary for the appellant to aver that, but for the fraudulent action on the part of the attorney, if there was (and there was no evidence received to support the claim), this eighth candidate would have been elected.

[7] Moreover, the aggrieved party, if the facts supported his claim, would have had ready redress in the New York state court. Not having challenged the result in any of the ways open to him, his right to contest the action of the officers of the company chosen by this board of directors at this late date cannot well be recognized. We conclude the officers and directors were the de jure officers and directors of the O'Gara Coal Company at the time they gave the company's consent to the proposed plan of reorganization.

Concluding, as we do, that the record affirmatively shows consent on the part of the bankrupt to the proposed plan of composition and reorganization, we find it unnecessary to consider the various other contentions of the appellees in support of the order complained of—contentions involving the right of appellant to review the question here presented, the necessity of securing the consent of the bankrupt to the reorganization plan, the right of de facto officers to act for the company, and other interesting legal questions.

The petition to review and revise is dismissed. Upon appellant's appeal, the decree is affirmed with costs.