### In re ISAACS.

### Ex parte JASPER.

(Circuit Court of Appeals, Second Circuit. November 13, 1917.)

### No. 31.

BANKRUPTCY ⬤➾323—PROCEEDING—COLLATERAL.

Bankruptcy Act July 1, 1898, c. 541, § 57, subd. "h," 30 Stat. 560 (Comp. St. 1916, § 9641), provides that the value of securities held by secured creditors shall be determined by converting the same into money according to terms of the agreement pursuant to which such securities were delivered to such creditor, or by such creditors and the trustee by agreement, arbitration, compromise, or litigation, as the court may direct, and the amount of such values shall be credited upon the claims, and a dividend paid only on the unpaid balance. A creditor, who held a note of the bankrupts secured by a pledge of corporate stock, sold the shares something more than a year after the adjudication. It was agreed that the value of stock at the time when the petition in bankruptcy was filed was approximately $17,000, while the sale price of stock was nearly $24,000. *Held* that, the creditor having converted the stock into cash, he could not, although the statute provided other alternative methods for fixing the value of collateral, demand that the collateral should be treated as of its value at the date of the filing of the petition in bankruptcy, so as to allow him to receive additional dividends.

Petition to Revise Order of the District Court of the United States for the Southern District of New York.

In the matter of the bankruptcy of Moe A. Isaacs, individually, and the firm of Isaacs Bros. Petition by Morris Jasper to revise an order

of the District Court, affirming an order of the referee. Petition dismissed, and order affirmed.

This is a petition to revise an order of the District Court for the Southern District of New York (Judge Manton presiding), which in turn affirmed an order of a referee in bankruptcy upon the following facts: On December 2, 1913, the bankrupt Isaacs signed, and the bankrupt firm, Isaacs Bros., indorsed, a note for $25,750, payable to the order of Jasper, the petitioner. The note was delivered on the same day, and carried along with it in pledge 125 shares of the capital stock of the Public Bank of New York City, the property of Isaacs, under the usual terms by which Jasper might sell it after default. Petition was filed against Isaacs and Isaacs Bros. on December 31, 1914, followed on February 15, 1915, by an adjudication. Jasper sold the shares in June, 1916, under the terms of the pledge, for $23,750, and it was agreed that their value of December 31, 1914, was only $16,875. He contended that he should be charged under section 57, subd. "h," only with the value of the shares on December 31, 1914, but the referee took the value as fixed by their actual conversion into money, and liquidated the claim upon that basis against both the individual and the firm assets.

Samuel J. Rawak, of New York City (Alexander S. Marcuson, of New York City, of counsel), for petitioner.

Leo Oppenheimer, of New York City, for trustee.

Before WARD and HOUGH, Circuit Judges, and LEARNED HAND, District Judge.

LEARNED HAND, District Judge (after stating the facts as above). The only question before us is the time at which the value of the security shall be fixed, and so far as we have been able to find that question has been passed upon only in Steinhardt v. National Park Bank, 120 App. Div. 255, 105 N. Y. Supp. 23, where it was held that the time was that at which the creditor sold out the security. With this conclusion we agree. The section fixes two possible ways of realizing the value which must be charged against the claim: The first is by converting the security into cash under the terms of the pledge; the second is "by agreement, arbitration, compromise, or litigation, as the court may direct." What the creditor in the case at bar asks is that the value of the security shall be fixed in some way other than by converting it into money according to the terms of the agreement, although he has in fact so converted it. If he is right, conversion can never "determine" the liquidation value, however controlling the amount realized might be as evidence of that value. We think the section could not have more clearly expressed its meaning, that, when the creditor lawfully converts the securities into money, the amount realized should determine the amount to be charged against the face of the claim.

That the creditor may under his agreement lawfully convert the security into cash, so long as the court does not interpose, is settled. Hiscock v. Varick Bank, 206 U. S. 28, 40, 27 Sup. Ct. 681, 51 L. Ed. 945. Usually the court will not interpose, but the creditor may unduly delay exercising his right, or the security may not be salable within any convenient season, so that the exigencies of speedy administration of the estate require a liquidation under one of the four secondary alternatives. This the court could then direct, and wind

up the administration. At times, also, it seems that courts have declined to recognize the amount realized upon a timely sale, if the result is oppressive. Re Davis, 174 Fed. 556, 98 C. C. A. 338. But upon this we do not express an opinion.

Nothing in Sexton v. Dreyfus, 219 U. S. 339, 31 Sup. Ct. 256, 55 L. Ed. 244, looks to the contrary of the views we have expressed, rather the language (219 U. S. on page 345, 31 Sup. Ct. 256, 55 L. Ed. 244) bears them out. That case does, however, fix the termination of interest at the date of petition filed.

No issue was raised at the bar of any difference under Hiscock v. Varick Bank, supra, between the amount of the debt against the maker and of that against the indorser, and we therefore ignore that question.

The petition is dismissed, and the order affirmed, with costs.