## In re O'GARA COAL CO. *

### CHICAGO TITLE & TRUST CO. v. GARDNER.

(Circuit Court of Appeals, Seventh Circuit.   January 3, 1922.)

Nos. 2933, 2954.

Bankruptcy ⬸154, 326—Claim of bank against estate and claim of trustee for funds of estate deposited held not subject of set-off; "mutual debts."

A provable claim of a bank against a bankrupt estate, and a claim of the trustee in bankruptcy for funds of the estate deposited in the bank as an authorized depository of the court, *held* not "mutual debts," which may be made the subject of set-off by either party under Bankruptcy Act, § 68a (Comp. St. § 9652a).

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Mutual Debts.]

Appeal from, and Petition to Review and Revise Order of, the District Court of the United States for the Eastern Division of the Northern District of Illinois.

In the matter of the O'Gara Coal Company, bankrupt. From an order of the District Court, made on petition of Frank G. Gardner, trustee, the Chicago Title and Trust Company, as receiver of the La Salle Street Trust and Savings Bank, appeals, and also files petition to review and revise. Reversed, and petition dismissed.

In 1913 O'Gara Coal Company became bankrupt. It owed the La Salle Street Trust & Savings Bank a note for $15,000. Trustees of bankrupt deposited funds of the estate in this bank, which was an authorized depository of the District Court. In June, 1913, the bank became insolvent and suspended business, and a receiver was appointed in the state court. On suspension of the bank the deposit of the trustee was almost $20,000. The state court appointed a receiver for the bank, who, in September, 1914, exhibited in the bankruptcy court proof of unsecured claim against the bankrupt, based on said note due the bank, which was allowed in full. June,

1916, trustees in bankruptcy filed in the state court claim for the amount of such deposits and demanding priority for the claim. Afterwards the demand for priority was abandoned, and claim allowed in full as a general claim. In the liquidation of the assets of the bank its receiver has paid creditors two dividends, the trustee in bankruptcy being paid as such dividends, on its claim allowed against the bank for the deposits, August, 1916, $4,963.35, and June, 1918, $1,985.34. May 22, 1918, trustee in bankruptcy filed its petition in the bankruptcy court, setting forth the facts substantially as above stated, and alleging that by section 68 of the Bankruptcy Act (Comp. St. § 9652) the trustee is entitled to set off against the claim of the receiver of the bank the amount which is due to the bankrupt estate from the bank as aforesaid, praying for decree setting off such claims, and that upon payment of balance, if any, which may then be due on such note, certain collateral which accompanied said note may be ordered to be surrendered by the receiver of the bank. October, 1920, the referee entered an order granting the prayer of the petition for set-off and decreeing accordingly, and February, 1921, the district court confirmed such order and decree. The matter is brought here both by appeal and petition to review and revise.

Hiram T. Gilbert, of Chicago, Ill., for appellant.
A. F. Reichman, of Chicago, Ill., for appellee.

Before BAKER, ALSCHULER, and EVAN A. EVANS, Circuit Judges.

ALSCHULER, Circuit Judge (after stating the facts as above). Only questions of law are involved, which we will dispose of without determining the question of appellate procedure. The primary and controlling question is: Was there at the time the bank suspended a right of set-off as between these demands? Section 68 provides that—

"In all cases of mutual debts or mutual credits between the estate of the bankrupt and the creditor the account shall be stated and one debt set off against the other and the balance only shall be allowed or paid."

We are met upon the threshold with the condition that the deposits were not made by the bankrupt, which, but for the bankruptcy, would presumably have had the right to determine whether or not it would select as its depository the bank to which it was at the same time indebted, and which it knew had a right to apply the deposit upon any debt due the bank. The deposit here was made by the trustee in bankruptcy, an officer of the court, in a bank which was by the court and under the law designated as a depository for funds of bankrupt estates, not of this bankrupt alone, but of any bankrupt. Indeed, under the pleadings here, it does not appear that at the time these deposits were made the trustee in bankruptcy was aware that the bank held any such claim against the bankrupt, for it appears that only after the bank suspended was the claim of the bank exhibited in the O'Gara bankruptcy proceedings. This fact may not in strictness affect the question of the right of set-off, but it serves to show the doubtless unintended result which might flow from holding the bank and trustee in bankruptcy to be in such relation toward each other that the respective claims might be considered "mutual debts."

The relation between a bank and its patron, under which the latter borrows from the bank and carries there a checking account, of itself suggests that mutuality which is a proper subject for the set-off of

contra debts. The depository here is but the agent of the court, or more directly of the officer of the court in the holding of the funds which the court controls. If it chanced that a bankrupt was personally indebted to a receiver or a trustee of an estate, could the trustee apply the funds coming into his hands in this capacity upon a debt personally owed the trustee by the bankrupt? The question answers itself. So if the trustee, instead of himself holding the money, constitutes some bank his agent or depository for the purpose of safely keeping it, there is not thereby constituted between them that legal or equitable mutuality which would enable the claims to be set off.

While here it is the depositor who is undertaking to have the claims set off as mutual debts, in order to succeed the mutuality must be such that at the time of the insolvency they may be the subject of set-off. In this case it would be the time of the suspension of the bank. If at that time each debtor had not a right of set-off against the other, neither had such right. But it is hardly conceivable that prior to the suspension of the bank it was within its right and power to have applied the deposit made by the trustee in bankruptcy upon the bank's claim against the bankrupt. If a bank had the right so to do, no legal representative of a bankrupt estate could safely deposit funds of the estate in any bank, for it may be that without the knowledge of the depositor, the bank may hold a claim against the bankrupt, by virtue of which the bank could appropriate the deposit and apply it upon the bank's claim, to the detriment of other creditors of the bankrupt. Such legal representative, if so minded, might deliberately deposit with a creditor bank the funds of the estate with the very purpose of putting it in the bank's power to appropriate such funds upon the claim of the bank, and thus under sanction of the law prefer the bank. It seems too plain for argument that this cannot properly be done. If, prior to the suspension of the bank, it could not properly have seized upon and applied the trustee's deposit, it could not properly be done by the bank's trustee after the suspension.

The fact that this bank was a depository which under the law the court had designated as such also militates against the proposition of mutuality of debt. To the extent that legally authorized depositories are less than the whole number of banks, the choice of the trustee is narrowed to such banks as have been duly authorized. Had there been but one, the trustee would have only "Hobson's choice." Surely it could not have been intended that, in limiting the number of depositories in which such funds may be placed, there be incurred even remotely the risk of the lawful appropriation of funds to which normally all creditors are entitled to the claim of one creditor whose legal or equitable standing was not different from the others, save only in the fortuitous circumstance that the court's officer happened to deposit there funds of the bankrupt estate.

The right to set-off of the bankrupt estate as against the insolvent bank and its creditors is not different from the right of set-off of the insolvent bank as against the bankrupt and its creditors. There are not here such "mutual debts" as in law or in equity may properly be set off. In re United Grocery Co. (D. C.) 253 Fed. 267, considers a situation

quite identical with that here, and reaches the same conclusion as above indicated. The main reliance in support of the decree is the case of People v. California Safe Deposit & Trust Co., 168 Cal. 241, 141 Pac. 1181, L. R. A. 1915A, 299. While in some respects that case may be distinguished, there is much in it which, if followed here, would justify this decree. In this respect, however, we are not in accord with its holding.

We find that claim of the receiver of the bank and that of the trustee in bankruptcy were not properly the subject of set-off, and direct that the order or decree entered in the District Court be set aside, and that the petition to set off the claims be dismissed.