### In re O'GARA COAL CO.

### GARDNER v. CHICAGO TITLE & TRUST CO.

(Circuit Court of Appeals, Seventh Circuit. March 10, 1926. Rehearing Denied April 26, 1926.)

#### No. 3638.

1. **Bankruptcy ⟨⟩364—Filing of secured debt as unsecured claim is a waiver of the security.**

The effect of filing a secured debt as an unsecured claim is a waiver of the security, title to which, if collateral, then rests in the trustee.

2. **Bankruptcy ⟨⟩336—Secured claim, knowingly filed as unsecured, may not be amended and proved as secured debt (Bankr. Act, § 57 [Comp. St. § 9641]).**

Where a secured debt is filed as an unsecured claim, unless through excusable ignorance or mistake, the creditor, in view of Bankr. Act, § 57 (Comp. St. § 9641), may not withdraw it and prove it as a secured claim.

3. **Bankruptcy ⟨⟩323—On filing of secured claim, security is to be valued as of date of petition (Bankr. Act, §§ 57e, 57h [Comp. St. § 9641]).**

On filing of a secured claim under Bankr. Act, §§ 57e, 57h (Comp. St. § 9641), the security is to be valued as of the date of filing the petition in bankruptcy.

Appeal from and Petition to Review and Revise an Order from the District Court of the United States for the Eastern Division of the Northern District of Illinois.

In the matter of the O'Gara Coal Company, bankrupt. Appeal by Frank G. Gardner, trustee, from an order directing payment of a claim to the Chicago Title & Trust Company as receiver of the La Salle Street Trust & Savings Bank. Reversed.

Certiorari denied 46 S. Ct. 633, 70 L. Ed. ——.

Arthur M. Cox, of Chicago, Ill., for appellant.

Hiram T. Gilbert, of Chicago, Ill., for appellee.

Before EVANS, PAGE, and ANDERSON, Circuit Judges.

PAGE, Circuit Judge. This is an appeal by the trustee in bankruptcy of the O'Gara Coal Company, here called trustee, from an order of the District Court, directing the trustee to pay to the receiver of the La Salle Street Trust & Savings Bank, here called receiver, $25,650.

On petition filed September 13, 1913, O'Gara Coal Company was adjudged a bankrupt, and trustees were appointed, who acted from November 11, 1913.

Funds, known by the bank to be trustees' funds, amounting to $19,843.62, were, on June 11, 1914, by the trustees deposited in the La Salle Street Trust & Savings Bank. The bank closed on June 12, 1914, owning the demand collateral note of O'Gara Coal Company, dated September 6, 1913, for $15,000, secured by 1,500 shares of the capital stock of the Harrisburg Saline Collieries Company, a subsidiary of, and whose stock was owned by, O'Gara Coal Company.

The trustees' claim was allowed against the bank in the state circuit court for $19,843.62. Dividends paid thereon reduced it, on June 12, 1918, to $12,994.93.

September 11, 1914, the receiver filed its note in bankruptcy as an unsecured debt, and the same was then allowed in full, as found by this court, in Re O'Gara Coal Co., 278 F. 509. August 21, 1917, the receiver made proof of the above note as a secured debt. No reference is made in the proof to the fact

that the claim was formerly filed and allowed as an unsecured claim, except the following:

"The foregoing proof of debt is made by this deponent by way of amendment to his proof of debt heretofore and on, to wit, September 11, A. D. 1914, filed in the above-entitled court and cause."

The following appears as a part of said proof:

"No valid or bona fide sale of said securities was heretofore made by said La Salle Street Trust & Savings Bank or by any one claiming through or under said bank."

May 22, 1918, the trustee filed in the bankruptcy proceedings a petition asking that the indebtedness between the two concerns be set off, one against the other, and that, upon the payment of any balance due from the trustee to the receiver the collateral held by the receiver; in equity, be released and decreed to the trustee. The receiver contested, but on October 26, 1920, the referee made an order, finding in favor of the right of set-off and that the trustee, upon the payment of any balance, was entitled to cancellation of the note and surrender of the collateral. In February following, the court affirmed that finding, whereupon the matter was appealed to this court and the right of set-off was denied. In re O'Gara Coal Co., 278 F. 509 (January 3, 1922). The Supreme Court reversed this court on April 9, 1923 (261 U. S. 453, 456, 43 S. Ct. 424, 67 L. Ed. 741, 29 A. L. R. 622), the opinion concluding:

"The bankruptcy court may allow the bank's claim for such sum only as may seem to the court to be owing above the value of the security (section 57e [Comp. St. § 9641]), and may withhold dividends upon that sum until the debt due to the trustee has been paid."

After the remanding order, the record shows the following order was made by the referee on June 18, 1924:

"Order claim of William C. Niblack, receiver of La Salle Street Trust & Savings Bank, be allowed for $2,105.07, collateral held by claimant to be surrendered to trustee on payment of claim."

The court reversed that order and allowed the bank's claim for $15,000, with interest at the rate of 6 per cent. from September 1, 1913, ordering that the trustee withhold dividends until the trustee's claim was paid.

The matter was again appealed to this court, and reversed because the mandate of the Supreme Court had not been properly followed. 5 F.(2d) 1019.

Thereafter the receiver filed in the District Court a petition in which is brought together, for the first time, much of the proceedings in the District Court, the Court of Appeals, and the Supreme Court. The prayer of the petition is that the trustee be required to pay to the receiver the $15,000 note, with interest at 6 per cent. from its date. Other than a clear presentation of many facts, not so presented to the Court of Appeals and Supreme Court before, we do not see that the petition has any place in the record.

From the petition, it appears that, when the trustee, on May 22, 1918, filed its petition for set-off, all parties knew that the O'Gara Company had become solvent. When the negotiations were commenced does not appear, but the petition shows that on May 31, 1918, the O'Gara Coal Company and its bondholders' committee had entered into an agreement which recognized the solvency of the company and presented to the District Court a plan, to be consummated under the direction and order of the court, for the purpose of readjusting its mortgage indebtedness and the payment of all claims against the O'Gara Coal Company and its subsidiary companies. The plan provided for the conveyance of the properties of the subsidiary companies to the O'Gara Company and for the payment, out of funds to be set aside for that purpose, of all the indebtedness of the O'Gara Company.

The District Court entered a decree on May 9, 1919, for the purpose of carrying out the objects of the agreement and the petition filed, in which the trustee was directed to reserve funds for the purpose of paying "the claims of creditors of the O'Gara Coal Company," the order being to "pay immediately * * * all claims which have been allowed herein at the full amount of such allowance, without interest except as to secured claims, all claims to which no objections have been or shall be filed, and, where objections apply to part only of a claim, the full amount of each such claim unobjected to without interest, retaining in his possession in each such instance a sum sufficient to pay that portion of the claim covered by objections until such objections shall be disposed of, then pay according to decision of court."

It is not set out in the petition, but it appears that the whole matter upon that petition and the decree was brought to and passed upon by this court and affirmed, on September 24, 1919, in O'Gara Coal Co. v. N. Y. Central R. Co., 260 F. 742, 171 C. C. A. 480. It appears that, pursuant to that

.decree, the O'Gara Coal Company was reinvested with its property and paid all of the claims of the O'Gara Coal Company which had been theretofore allowed, and that the trustee had sufficient funds to pay all claims remaining unpaid, including that of the receiver.

In connection with the petition, there was filed a stipulation, from which it, for the first time, appears that, at the time of the petition in bankruptcy and at the time of the filing of the receiver's claim as an unsecured claim, the collateral stock had no value, and at all times after January 1, 1917, eight months before the receiver filed his claim as a secured debt, the stock was worth at least $50,000. The decree, here in question, proceeded upon the theory that, as the stock, at the time of the conveyance of the Harrisburg Saline Colleries Company assets in August, 1919, to the O'Gara Coal Company, pursuant to the court's decree, made the stock, which was then worth $50,000, of no value, that was a conversion of the stock by the O'Gara trustee, and that by reason thereof the estate in bankruptcy became liable to pay the full amount of the debt, principal and interest; and the decree further proceeded upon the theory that the claim stood there unallowed, and that, inasmuch as the security liquidated the claim, there was no claim to be allowed in bankruptcy and consequently no basis for a set-off.

From the filing of the claim in 1917, as a secured debt, no attempt was ever made to have it allowed in that form. The petition filed in May, 1918, to allow the set-off, was not considered until October 26, 1920, at which time the referee certified to the judge that the set-off should be allowed, and, on February 3, 1921, the finding of the referee was affirmed, and the court ordered:

"That said * * * trustee, pay to said * * * receiver * * * the sum of ———, being the amount due and owing upon a promissory note executed by the bankrupt to one C. B. Munday for $15,000, after allowing thereon as a set-off the sum of $12,-894.93, and that, upon payment being made of said amount, the liability of said bankrupt upon said note be extinguished and said Chicago Title & Trust Company * * * as receiver * * * deliver to * * * trustee, the said promissory note, duly canceled, and surrender to said * * * trustee in bankruptcy, as aforesaid, the 1,500 shares of the capital stock of the Harrisburg Saline Colleries Company, given by said bankrupt to secure the payment of said promissory note."

Although that was more than a year after the decree of May 9, 1919, whereby the conveyance of subsidiary properties were directed to be made to the O'Gara Coal Company, and after the trustee was directed to make payment of all claims against the O'Gara Coal Company, for the payment of which funds were then in his hands, no reference was made to those facts. Upon appeal from that decree, this court considered but one question, and found "that claim of the receiver of the bank and that of the trustee in bankruptcy were not properly the subject of set-off." 278 F. 509, 512.

The Supreme Court said:

"This case arises in the matter of O'Gara Coal Company, bankrupt, upon a petition for a set-off presented by the trustee of the bankrupt estate." 261 U. S. 453, 455, 43 S. Ct. 424, 67 L. Ed. 741, 29 A. L. R. 622.

And that was the sole question considered. The court gave no consideration whatever to the status of the claim of the receiver against the bankrupt, other than to make the observation that "the bank filed a proof of the bank's claim as unsecured in 1914, but amended it to proof of a secured claim in 1917."

The Supreme Court assumed that the claim was properly before the court for allowance as a secured debt, and we are of opinion that, when it said, at the close of its opinion, "the bankruptcy court may allow the bank's claim for such sum only as may seem to the court to be owing above the value of the security (section 57e)," it was merely pointing out the proper practice in such cases, without intending otherwise to control or direct the procedure in the District Court, and that the District Court was as free thereafter to act upon the bank's claim, so far as allowing or disallowing it was concerned, as it would have been if that language had not been in the opinion. There is no intimation anywhere as to the time as of which the security was to be valued. The finding of the court that this court should be reversed and the set-off allowed is the material part of the mandate.

[1, 2] Before any presentation of the claim for allowance in the bankruptcy court, the bank, and consequently its receiver, had the right to do one of three things: (a) Stay out of the bankruptcy proceeding and depend upon its collateral for payment of its claim; (b) dispose of its collateral as provided in the collateral agreement in its note and then file its claim; (c) or it might file its claim as an unsecured debt. Being in possession of all the facts, the receiver elected to file his

claim as unsecured, with full knowledge that the security was worthless.

Under section 57 of the Bankruptcy Act (Comp. St. § 9641) the receiver had no right to file his claim as a secured claim and have it allowed, even for the purpose of voting upon a trustee, without reducing it by the amount of the value of the security. The provision and purpose of the law is that those having security shall, in the manner provided by the statute, get the benefit of that security, but must do so at the expense of reducing the claim upon which they are entitled to participate as a general creditor in the funds of the estate, and the receiver must have known from the commencement of the bankruptcy proceeding that the interest upon its note, so far as participating in the general estate was concerned, wholly ceased. When one has two inconsistent remedies and elects to pursue one, he abandons the other. The remedies open to the receiver in this case were wholly inconsistent, and were to be secured by different lines of procedure. In the case of the proceeding as for an unsecured claim, the participation would be, as between the receiver and other creditors, upon the full amount of the claim. If the procedure was by the course to establish the balance of a secured claim, the participation would be only upon that balance. In bankruptcy, there have been many decisions in the District Courts, all to the effect, so far as we have found, that the consequence of filing a secured claim as an unsecured debt is the waiver of the security. White v. Crawford (C. C.) 9 F. 371; In re M. I. Hibbler Machine Co. (D. C.) 192 F. 741; In re Fisk & Robinson (D. C.) 185 F. 974; In re Little (D. C.) 110 F. 621, 627 (Judge Shiras); In re Norris, 18 Fed. Cas. page 316, No. 10,303; In re High, 12 Fed. Cas. page 133, No. 6,-473; In re Jaycox, 13 Fed. Cas. page 409, No. 7,242, in which case it was held, however, that when such proof was made through ignorance or mistake a creditor ought to be allowed to withdraw his proof and prove as a secured creditor; In re Granger, 10 Fed. Cas. page 958, No. 5,684.

The answer to the objection, that the filing of the amendment to the claim, for allowance as a secured debt, was without permission of the court, should have been filed earlier, might be well taken under different conditions. But here no steps were ever taken for the allowance of the claim as secured until after the case was returned from the Supreme Court and several years after the decree of May 9, 1919, ordering payment of all claims. Unquestionably, great latitude has been allowed, as there should be, in the amendment of claims. There are, on this proposition, many District Court decisions. In re Myers (D. C.) 99 F. 691, 693, an Indiana case, District Judge Baker said:

"The court undoubtedly possesses the power, in its discretion, and in a proper case, to allow proofs of debt to be amended, and in case of mistake or ignorance, either of fact or law, will generally exercise that power, in the absence of fraud, and when all the parties can be placed in the same situation that they would have been in if the error had not occurred, and where justice seems to demand that the amendment should be made."

See In re Wilder (D. C.) 101 F. 104; In re Falls City Shirt Co. (D. C.) 98 F. 592; In re Hubbard, 12 Fed. Cas. page 775, No. 6,813; In re Fisk & Robinson (D. C.) 185 F. 974. See, also, Hutchinson v. Otis, 190 U. S. 552, 23 S. Ct. 778, 47 L. Ed. 1179, where the court permitted the amendment and granted the relief because of a mistake of fact.

All those cases show that amendments are only allowed because of some mistake or error, and in furtherance of justice. Here the alleged amendment of the claim sets up no error or mistake, and none is shown in the record. From the situation of the receiver, we must assume that he knew that the collateral was worth at least $50,000 on January 1, 1917, and yet he delayed seven months thereafter before filing his amended claim. No fact is set out justifying an amendment, and the record shows that no steps were taken for ten years after bankruptcy to sell or value the stock, as provided by law. Parties, with full knowledge of the facts, should not be permitted to speculate for years as to the outcome of securities, and then invoke the aid and assistance of the court to get the benefit of a security which after years of time has become valuable. We are of opinion that, in the exercise of a sound discretion, the District Court should not have allowed the claim as a secured debt.

[3] But, assuming that we have misunderstood the mandate of the Supreme Court, and that under that mandate, or in the exercise of a reasonable discretion, the court should have permitted the filing of the claim as secured and should have valued the stock and then have allowed the claim for any balance, there yet remains the question, As of what date should the securities be valued? In Re Isaacs, 246 F. 820, 159 C. C. A. 122, there was a sale, eighteen months after the petition, for a much larger sum than the collateral was worth at the time of the filing,

and the court held that the sale price must be accounted for. We are of opinion that that holding was justifiable on the ground that the parties had no right to speculate and thereby make a profit. Under paragraphs 57e and 57h of the Bankruptcy Act, it is clearly the purpose of the law that secured claims shall not, even for the purpose of participating in creditors' meetings, be allowed for more than seems to be owing over and above the value of the securities. That must mean that the valuation is to be made before the expiration of the time for the presentation and allowance of claims. Even though amendment be allowed after the lapse of the year for proving claims, we think there is no reason why that should change the time as of which the value should be found. In Sexton v. Dreyfus, 219 U. S. 339, 345, 31 S. Ct. 256, 257 (55 L. Ed. 244), the court said:

"If, under section 57 of the present act, the value of the security should be determined by agreement or arbitration, the time for fixing it naturally would be the date of the petition. At that moment the creditors acquire a right in rem against the assets. Chemical National Bank v. Armstrong, 59 F. 372, 378, 379 [8 C. C. A. 155, 28 L. R. A. 231]; Merrill v. National Bank of Jacksonville, 173 U. S. 131, 140 [19 S. Ct. 360, 43 L. Ed. 640]. When there is delay in selling, because of the hope of getting a higher price, it is more for the advantage of the secured creditor than of any one else, as he takes the whole advance, and the others only benefit by a percentage, which does not seem a good reason for allowing him to prove for interest by indirection. Whenever the creditor proves, his security may be cut short. That is the necessarily possible result of bankruptcy. The rule under discussion fixes the moment in all cases at the date which the petition is filed, but beyond the fact of being compelled to realize his security and look for a new investment there is no other invasion of the secured creditor's contract rights, and that invasion is the same in kind whatever moment may be fixed."

We are of opinion that the value should be found as of the date of filing the petition. Nor will the finding of the value to be nothing entitle the receiver to take the stock as his own. The title passed to the trustee, and all the receiver is entitled to is its value, as found by the court.

There is another phase of this case not discussed, but which in our opinion stands in the way of the receiver ever having any benefit from the collateral. In May, 1919, the trustee was directed to pay all claims, and

doubtless if it had not been for the many attempts by the receiver to avoid the set-off the claim would have been long since paid. It never has been the law that a debtor, when ready, willing, and able to do so, may not discharge a past-due debt and have his collateral returned.

The receiver's claim should be allowed for the amount of the note and interest to date of filing petition in bankruptcy, $15,-017.50, from which should be deducted the balance of the trustee's claim against the receiver, $12,994.93, and the trustee directed to pay the receiver the balance of $2,022.57.

The decree is reversed, the receiver to pay costs of this appeal.