## SEHON–STEVENSON & CO. v. UNION TRUST CO. OF MARYLAND et al.

### In re SMITH.

### No. 4635.

Circuit Court of Appeals, Fourth Circuit.

Aug. 30, 1940.

F. M. Livezey, of Huntington, W. Va., for appellant.

Walter H. Buck and Eben F. Perkins, both of Baltimore, Md., for appellees.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

PARKER, Circuit Judge.

This is the second appeal in a controversy arising in the bankruptcy of R. R. Smith. The first appeal was before this court in Union Trust Co. v. Townshend, 4 Cir., 101 F.2d 903, where we held that the Union Trust Company held an equitable lien upon $72,000 of bonds of the Columbia Gas & Electric Company which had come into the hands of the trustee in bankruptcy, and

remanded the case that the lien might be enforced and conflicting rights in the securities determined. Upon the remand, the District Court adjudicated the rights of the Union Trust Company adversely to the contentions of Sehon-Stevenson & Company, a creditor holding a junior lien upon the bonds under a subsequent order or assignment, and that company has appealed.

There is no dispute as to the facts. The amount of the claim of the Trust Company on November 30, 1931, the date of the filing of the petition in bankruptcy, was $74,868. It held as security therefor 1,600 shares of the capital stock of the First Huntington National Bank in addition to the equitable lien on the $72,000 of bonds. This stock was appraised as of that date at $40,000 and the bonds at $61,200. The amount of the claim of Sehon-Stevenson & Company was $15,523.44. It had a junior lien upon the $72,000 bonds but no claim upon the bank stock. The bonds came into the possession of the trustee in bankruptcy under the circumstances set forth in the former opinion. On March 15, 1932, the Trust Company filed petition with the referee in bankruptcy asserting a lien on the bonds and asking that they and the bank stock be sold and the proceeds applied on its loan; and the controversy arising upon this petition was the one involved in the former appeal. No sale of the bank stock was asked either by the trustee in bankruptcy or by Sehon-Stevenson & Company, and no action was taken to enforce the Trust Company's rights as pledgee thereof until April 12, 1935, when a sale was had upon an agreement between the Trust Company and the trustee in bankruptcy and the stock was purchased by the Trust Company for $20,800. There is no contention that it was worth any more at that time.

On March 11, 1932, the trustee in bankruptcy petitioned for leave to sell the bonds upon which the Trust Company and Sehon-Stevenson & Company were claiming liens. The Trust Company objected; but the sale was authorized over its objection, and 55 of the bonds were sold by the trustee for a net price of $48,489.96. Of this amount $5,281.40 was deposited in the First Huntington National Bank and was intact at the time of the hearing. $43,208.56 was deposited by the trustee in bankruptcy in the Huntington Banking & Trust Company. That bank was closed as insolvent in 1933, and there will be a substantial loss with respect to the deposit made therein.

After the filing of the petition in bankruptcy, the Trust Company collected a dividend of $300 on the stock pledged with it, and the trustee in bankruptcy collected $849.68 interest on the remaining 17 Columbia Gas & Electric Corporation bonds. There are now a number of matured interest coupons attached to these bonds.

The appellant contended in the court below, and contends here, that, for the purpose of marshaling the securities as between the Trust Company and itself, the debt of the Trust Company should be credited with the appraised value of the bank stock, $40,000, instead of with $20,800, the price at which it was actually sold; that the Trust Company should be charged with a proportionate part of the loss sustained as the result of the bank failure on the deposit from the 55 bonds sold by the trustee; and that the Trust Company should be allowed no interest on its claim after the filing of the petition in bankruptcy. The District Court held against the appellant as to each of these contentions and entered a decree for the Trust Company. The decree held, in brief, that the amount of the Trust Company's claim, after application of the proceeds of the bank stock, was $54,068 as of November 30, 1931; that this claim was a prior lien upon the deposits made in the bank from the sale of the 55 bonds and also upon the remaining 17 bonds; that the $300 dividends on bank stock, the $849.68 interest collected on bonds and the matured interest coupons on the bonds should be applied on interest accruing on the Trust Company's claim subsequent to November 30, 1931; that the cash deposits in bank, together with the 17 bonds and attached coupons, should be turned over to the Trust Company to be credited on its claim; and that any further sums to which the trustee might become entitled as the result of the sale of the 55 bonds and the deposit of the proceeds in the failed bank should be paid to the Trust Company until its claim should be paid in full.

Three questions are presented by the appeal for our consideration: (1) whether appellant was entitled to have the Trust Company's claim credited with the appraised value of the bank stock instead of with the price at which it was sold; (2) whether the appellant was entitled to have the claim credited with a proportionate part of the loss sustained as a result of the deposit by the trustee in bankruptcy of the proceeds of the 55 bonds in the failed bank;

and (3) whether there was error in allowing interest on the claim of the Trust Company subsequent to the filing of the petition in bankruptcy to the extent that interest and dividends were collected on the bonds and bank stock held by it as collateral security. We think that all of these questions should be answered in the negative.

So far as the question relating to the credit of the bank stock is concerned, it must be remembered that the controversy here is not between the Trust Company and the trustee in bankruptcy with respect to the amount for which an unsecured claim may be proved after application of securities. If it were, there is authority to the effect that the securities should be valued as of the date of the bankruptcy unless subsequently sold for a higher price. In re O'Gara Coal Co., 7 Cir., 12 F.2d 426, 430, 46 A.L.R. 916. The rule, even in such cases, however, is generally stated to be that "the time for fixing the value of the security is the date of its actual conversion into money by the creditor, and not the date of the filing of the petition". Collier on Bankruptcy, 13th Ed., vol. 2, p. 1151; Remington on Bankruptcy, vol. 2, p. 322, sec. 926; In re Salmon Weed & Co., 2 Cir., 53 F.2d 335, 337, 79 A.L.R. 379; In re Isaacs, 2 Cir., 246 F. 820; Steinhardt v. National Park Bank, 120 App.Div. 255, 105 N.Y.S. 23. The controversy here, however, is between a junior and a senior encumbrancer on a doubly charged fund, the junior encumbrancer contending that the senior encumbrancer is chargeable with the value of the singly charged fund as of the time of the filing of the petition, although no demand was made upon him by any one to realize on the fund at that time and there is no evidence that he was guilty of bad faith or even of negligence in failing to do so.

■■ No authority is cited in support of this position of appellant; and we know of none. On the contrary the law is well settled to the effect that, "a junior creditor cannot compel his senior to protect the singly charged security or to take any action whatsoever in regard to it. The junior encumbrancer's remedy is to discharge the prior lien and ask to be subrogated to the prior creditor's rights." 18 R.C.L. 467, 468; Coburn v. Stephens 137 Ind. 683, 36 N.E. 132, 45 Am.St.Rep. 218; Lambertville Nat. Bank v. McCready Bag, etc., Co., N.J.Ch., 15 A. 388, 1 L.R.A. 334. It is clear, therefore, that appellant may not charge the Trust Company with the value of the bank stock, the singly charged fund, as of the date of the bankruptcy, to secure the release of the doubly charged bonds. All that it is entitled to is to have the Trust Company's debt credited with the amount actually received from the sale of the stock.

■ On the second question, we know of no principle upon which the Trust Company may be required to credit on its claim any part of the loss arising from the deposit of the proceeds of the 55 bonds. It held a first lien upon all of the bonds. The 55 bonds were sold under court order over its protest. It unquestionably had a first lien upon all of the proceeds derived from the sale; and when a part of these proceeds was lost without fault on its part, the lien on the remainder for the full amount of the debt was in no wise affected.

The case is not one where, bonds having been sold by an agent of the creditor, the creditor is properly chargeable with the amount received by the agent, or where loss has resulted from the neglect of the creditor with respect to funds received from the sale of collateral. The trustee in bankruptcy received the proceeds of the bonds and deposited them in the failed bank, not as agent of the Trust Company, but as an officer of the court; and the court held the funds subject to the rights of the parties in order that it might determine those rights, just as it had previously held the bonds. The case is not essentially different, therefore, from what it would have been if there had been a depreciation in the value of the bonds themselves preceding the settlement of the controversy. The Trust Company, in such situation, unquestionably has a first lien upon the remaining bonds and upon the remaining proceeds of such as have been sold, until the full amount of its claim is satisfied.

■■ The answer to the third question, relating to interest, becomes entirely immaterial in view of the fact that the security is not nearly sufficient to pay the face amount of the Trust Company's claim exclusive of interest. We note that in deciding that question the District Judge gave appellant the benefit of the rule relating to the allowance of interest when proof of claim partly secured is made for the purpose of participating in general assets, the rule in such case being that interest after bankruptcy is allowable on such claim only to the extent that interest or dividends are collected from the collateral pledged as

security. Sexton v. Dreyfus, 219 U.S. 339, 346, 31 S.Ct. 256, 55 L.Ed. 244. The rule applicable here, however, is that, so far as interest is paid from the security, it continues to run until payment is made. Remington on Bankruptcy, vol. 2, p. 312, sec. 921; Coder v. Arts, 8 Cir., 152 F. 943, 950, 15 L.R.A.,N.S., 372, affirmed 213 U.S. 223, 245, 29 S.Ct. 436, 53 L.Ed. 772, 16 Ann.Cas. 1008; In re Stevens, D.C., 173 F. 842; In re Fabacher, D.C., 193 F. 556. Under this rule, there is no room for the argument that, if interest after bankruptcy is allowed to a senior creditor, the unsecured claim of the junior creditor will be increased to that extent and the rule of Sexton v. Dreyfus, supra, nullified. But, as stated, any point with respect to interest becomes moot in view of the fact that the security involved is not sufficient to pay the face of the Trust Company's claim exclusive of interest.

For the reasons stated, the decree appealed from will be affirmed.

Affirmed.