## SEHON–STEVENSON & CO. v. TOWNSHEND.

## BANKS–MILLER SUPPLY CO. v. SAME.

### No. 2560.

District Court, S. D. West Virginia.

Sept. 10, 1940.

Okey P. Keadle, of Huntington, W. Va., for trustee.

F. M. Livezey, of Huntington, W. Va., for Sehon-Stevenson & Co.

Lewis A. Staker, of Huntington, W. Va., for Banks-Miller Supply Co.

HARRY E. WATKINS, District Judge.

This is the third appeal in the bankruptcy proceeding of R. R. Smith. Twice before, the Smith case has been before this court and the Fourth Circuit Court of Appeals. See In re Smith, 23 F.Supp. 174; Union Trust Co. of Maryland v. Townshend, 101 F.2d 903; Sehon-Stevenson & Co. v. Union Trust Co. of Maryland et al., 113 F.2d 968, decided August 30, 1940. No additional evidence has been taken in this case. The facts are stated in detail in these opinions, and will not be repeated here, except so far as they relate to the instant controversy.

In 1931 bankrupt was the owner of an undivided one-third of certain oil and gas interests, and the Houston Coal Company the owner of two-thirds thereof. For some time prior to November 30, 1931, the date of filing of the bankruptcy petition, the owners were negotiating with the Columbia Gas and Electric Company, and the United Fuel Gas Company, its subsidiary, for the sale of their oil and gas interests. By letter dated July 30, 1931, addressed to the Columbia Gas & Electric Company, bankrupt and the Houston interests submitted an offer to the gas company for the

sale of the oil and gas lands and leases at a stipulated price, which the gas company tentatively accepted by letter of August 1 following, subject to the approval of the title to the real estate to be sold and to a check of the acreage included in the deal.

By letter dated November 19 the gas company notified bankrupt and the Houston Coal Company of its objections to the title to certain parts of the property listed on a schedule attached to its letter. In this letter the gas company agreed to pay $1,175,000 par value Columbia Gas & Electric Company bonds for the property accepted, and agreed that in the event title to the property rejected should be cured within six months from date thereof, they would purchase all, or any part thereof at the price set forth in such schedule, payable in Columbia Gas & Electric Company bonds at par. The sellers approved this arrangement and sale was finally closed on November 25. C. M. Gohen, of Huntington, had been instrumental in assisting the bankrupt in the sale of his properties on which the First Huntington National Bank, for whom Gohen was acting, had a large lien. Mr. Gohen took the deed as Smith's agent to New York, and on November 25 closed the transaction and received the proceeds of the sale, out of which he paid liens to his bank and the Union Bank and Trust Company of Huntington, West Virginia, which left $72,000 in bonds of the Columbia Gas & Electric Company which were the subject of the litigation in the previous appeals.

Bankruptcy intervened on November 30, 1931, and the trustee, acting in conjunction with representatives of the Houston Coal Company, cleared the title to some of the rejected acreage. Attorneys and agents were employed by the trustee and the sum of $4,000 was expended from the funds of the estate in perfecting title to this additional acreage, which in January, 1933, the gas company agreed to accept. Thereby title was transferred by the trustee who received nine bonds of the Columbia Gas & Electric Company of the aggregate par value of $9,000 and $897.75 in cash. As result of the decision of the appellate court in the Union Trust Company of Maryland case, this court has already allowed petitioners equitable liens upon the bonds which came into Gohen's hands prior to bankruptcy. Petitioners, Sehon-Stevenson & Company and Banks-Miller Supply Company, claim that they hold valid equitable assignments upon these nine bonds and cash. By order entered May 13, 1940 the referee sustained objections of the trustee to such claims, allowing petitioners only common claims upon these nine bonds and cash. Petitioners have asked review of this order.

The claim of Sehon-Stevenson & Company is based upon an agreement dated August 10, 1931, between it and Smith. Smith was indebted as insurer on certain notes on which Sehon-Stevenson & Company had theretofore instituted suit. The agreement, after reciting the indebtedness, further recited that, "the said R. R. Smith is the owner of an undivided interest in a large amount of oil and gas land and leases in Martin County, Kentucky, and Wayne County, West Virginia, for which he is now negotiating a sale", and provided that, "the said R. R. Smith agrees that if and when the said oil and gas lands are sold, he will designate Charles M. Gohen of The First Huntington National Bank, of Huntington, West Virginia, the agent to receive and collect proceeds of said sale insofar as the said proceeds are payable to him", and would direct the said Gohen to pay the said Sehon-Stevenson & Company the amount of its claim, in consideration of which agreement, the creditor agreed not to take judgment against the bankrupt for the period of thirty days from the date of the agreement. It is stipulated that a copy of this agreement was delivered to Gohen.

The claim of Banks-Miller Supply Company is based upon a letter dated August 10, 1931, from Smith to Gohen, authorizing and directing Gohen to pay to Banks-Miller Supply Company, or to Simms & Staker, its attorneys, certain indebtedness owing by the bankrupt to the creditor, such payment to be made "out of funds which are or shall come into your hands for my account".

On August 12, 1931, Gohen in a letter to Simms & Staker, attorneys, acknowledged receipt of Smith's letter of August 10, and stated, "if and when adequate funds come into my hands as disbursing agent for R. R. Smith resulting from the sale of his one-third interest in the Houston-Smith gas properties, I will make payment to you as directed in said letter".

In Union Trust Co. of Maryland v. Townshend, 4 Cir., 101 F.2d 903, 908, the bonds had come into the possession of Gohen prior to the bankruptcy. In discussing the legal effect of a similar letter from

Smith, Judge Parker, in the majority opinion said: "We agree that until the receipt by Gohen of the funds derived from the sale no lien arose with respect to the property of Smith. It was not placed beyond the control of Smith until the sale, and his agreement that the debt of the Baltimore bank should be paid from the proceeds of sale was, until the sale was made and the proceeds received by Gohen, no more than an agreement to pay the debt out of a particular fund, which of itself gives rise to no lien".

Petitioners attempt to distinguish their claims from that of the Baltimore bank and the quotation cited by saying that they are not claiming an equitable lien, but claim that they hold equitable assignments. They say that on March 4, when the Baltimore bank took its purported assignment, there had been no sale of these gas properties; whereas, on August 10 when their alleged assignments were taken, a sale of all the properties had been made.

I do not believe that there was a sale of any of the property until November 19. Certainly there was no sale of the rejected property until January, 1933. Title had not been perfected within six months and the gas company was no longer obligated to buy. In its letter of November 19, the gas company rejected these properties, but offered to take them at specified amounts set out in a schedule if title was perfected within six months. The estate had its election whether to perfect title by expenditure of considerable money and accept this offer, or to sell the property at public sale for the best price obtainable and let the purchaser clear the title. As to these properties there was no sale and no contract binding upon either Smith or his trustee to sell at the price offered by the gas company until January, 1933, more than a year after bankruptcy. At date of bankruptcy there had been no sale of the rejected property. Consequently, title to that property passed to the trustee.

In Christmas v. Russell, 14 Wall. 69, 84, 20 L.Ed. 762, which is quoted in most decisions dealing with equitable assignments, it is said: "An agreement to pay out of a particular fund, however clear in its terms, is not an equitable assignment; a covenant in the most solemn form has no greater effect. The phraseology employed is not material provided the intent to transfer is manifested. Such an intent and its execution are indispensable. The

assignor must not retain any control over the fund—any authority to collect, or any power of revocation. If he do, it is fatal to the claim of the assignee. The transfer must be of such a character that the fundholder can safely pay, and is compellable to do so, though forbidden by the assignor. Where the transfer is of the character described, the fundholder is bound from the time of notice."

In Union Trust Company of Maryland v. Townshend, supra, the court holds that to constitute an equitable assignment there must be an intention on the part of the assignor to give and of the assignee to receive present ownership of the fund. The West Virginia law is to the same effect. In Arnold v. Buckhannon Bank, 116 W. Va. 589, 183 S.E. 52, the court mentions the disagreement in the federal cases, on equitable assignments, and proceeded to state, "the Virginia courts, however, are committed to the rule that to constitute an equitable assignment, the debtor must by order or otherwise place the creditor in position to compel payment of the debt from the holder of the fund; and that a mere agreement between debtor and creditor that the debt should be paid out of a designated fund, when received by the debtor, is not an assignment of and creates no equitable right to the fund".

In my opinion, the writings relied upon by petitioners are not in form nor in substance the assignment of anything. At most they constitute simple agreements on the part of Smith that in the event he should conclude a sale of his property which he was then negotiating, he would appoint Gohen as his agent to receive the funds and direct him to pay their claims. Gohen was not a fund holder and there was no intention that he should become such until the bankrupt, in his uncontrolled discretion, should complete the sale of his real estate. Until that time the bankrupt had full control over his property and the full right and power to say whether or not any fund should be created out of which the petitioners could be paid.

At the date of bankruptcy the oil and gas property was in the possession of the bankrupt. The trustee had the right of an execution creditor against property in the bankrupt's possession. Union Trust Company of Maryland v. Townshend, supra.

Under these facts the petitioners had neither an equitable assignment nor an

equitable lien upon the proceeds of sale of these rejected properties made subsequent to bankruptcy. The order of the referee is therefore affirmed.